BARBARA WATTERS, BY AND THROUGH HER NEXT FRIEND, V. GREGG WATTERS, v. HOMER LLOYD PARRISH, MATTIE LEE PARRISH, HARRY W. LAWRENCE AND HARRY E. LAWRENCE, AND HARRY E. LAWRENCE, GUARDIAN AD LITEM FOR HARRY W. LAWRENCE.

(Filed 30 June, 1960.)

1. Trial § 4—

A motion for a continuance is addressed to the sound discretion of the trial judge, and his denial of the motion will not be disturbed in the absence of a showing of manifest abuse of discretion.

2. Trial § 2—

A court has inherent power to control the call of cases on its docket so as to dispose of them with economy of time and effort for itself, for counsel and for litigants.

3. Same—

Where a passenger in one car institutes action against the drivers of both cars involved in the collision and thereafter one of the drivers institutes suit against the other, the denial of the motion of such driver that his action be first called for trial will not be disturbed in the absence of a showing of any unusual or extraordinary circumstances or any clear inequity, since plaintiff passenger cannot be compelled to stand aside while another action is litigated except in a clear case of hardship to the other parties, the matter being addressed to the sound discretion of the trial court.

4. Trial § 22a—

On motion to nonsuit, plaintiff is entitled to have the evidence considered in the light most favorable to her, and contradictions and discrepancies, even in plaintiff's evidence, do not justify nonsuit.

**5. Trial § 22b—**

Upon motions to nonsuit, entered by the several defendants after all the evidence of plaintiff and all the defendants is in, the court may consider so much of both defendants' evidence, or the evidence of either of them, as is favorable to plaintiff or tends to clarify or explain evidence offered by plaintiff, but will disregard defendants' evidence which tends to contradict or impeach plaintiff's evidence.

**6. Automobiles §§ 6, 15—**

It is negligence *per se* for a person to operate a motor vehicle while under the influence of intoxicating liquor, G.S. 20-138, or to fail to keep his vehicle on his right side of the highway and give to a vehicle approaching from the opposite direction one half of the main traveled portion of the highway. G.S. 20-146, G.S. 20-148.

**7. Automobiles § 41c—**

Plaintiff's evidence, together with the evidence of the driver of the car in which she was riding, tending to show that the driver of an automobile approaching from the opposite direction was under the influence of intoxicating liquor and drove his car to the left of the center line of the highway, resulting in a collision of the vehicles, *is held* sufficient to overrule such driver's motion to nonsuit in plaintiff's action against both drivers.

**8. Same—**

Where one aspect of plaintiff passenger's evidence, together with the evidence of one of defendant drivers, tends to show that the defendant in whose car plaintiff was riding failed to keep his vehicle on his right half of the highway as he was meeting the other car, and failed to give the approaching car one half of the main traveled part of the highway, resulting in a collision of the vehicles, *is held* sufficient to overrule his motion to nonsuit in plaintiff's action against both drivers.

**9. Same: Automobiles § 43— Evidence held insufficient to warrant nonsuit on the ground of insulating negligence.**

Evidence tending to show that two vehicles approaching each other on the highway were each on its left side of the highway, that the driver of the car in which plaintiff was riding turned to his right when the vehicles were some 200 feet apart, that when the cars were some 100 feet away he turned to his left to avoid a collision, that the other driver at about the same time turned to his right, resulting in a collision about the center of the highway, *is held* insufficient to warrant, on the ground of insulating negligence, nonsuit in favor of the driver of the car in which plaintiff was riding, since such driver, under the circumstances, could have reasonably foreseen that his negligence in driving to his left of the center of the highway would cause each driver to cut back and forth on the road to avoid a collision, and therefore his negligence in initially being on the wrong side of the road continued to constitute a proximate cause of the accident.

**10. Negligence § 8—**

The primary negligence of one party cannot be insulated by the negligence of the other so long as the primary negligence continues to constitute a proximate cause of the injury, or so long as the intervening negligence could have been reasonably forseen under the circumstances.

**11. Automobiles § 19—**

The doctrine of sudden emergency is not available to one whose own negligence brings about or contributes to the emergency.

**12. Automobiles §§ 41c, 43—**

The driver of a car colliding with a vehicle approaching from the opposite direction is not entitled to nonsuit on the ground that he was confronted with an emergency in that the approaching car was on its left side of the highway and that he cut to his left to avoid a collision, when there is evidence that he, initially, was also driving to his left of the center of the highway, and thus brought about the emergency.

**13. Automobiles § 37:    Evidence § 56—**

The testimony on cross-examination of one defendant by the other that such defendant had been convicted of driving while under the influence of intoxicating liquor in a prosecution growing out of the same accident is properly excluded even for the purpose of impeaching such defendant as a witness, since under the circumstances the testimony might be given undue weight by the jury, there being no testimony offered as to any conviction of such defendant theretofore or thereafter.

**14. Appeal and Error § 19—**

An assignment of error not supported by an exception in the record may be disregarded.

**15. Appeal and Error § 41—**

The exclusion of testimony cannot be held prejudicial when the same witness thereafter is permitted to testify to the same import.

**16. Automobiles § 49—**

A passenger in an automobile is not required by the law to maintain constant attention to the road, and evidence that a passenger was sitting sideways with her knees on the seat, talking to the driver, is insufficient to raise the issue of her contributory negligence in failing to keep a lookout and warn the driver when the evidence further establishes that the vehicle was traveling on a straight highway on a clear day at a lawful speed, and there is no evidence of any occurrence which did or should have made the passenger apprehensive as to the manner in which the vehicle was being operated.

**17. Appeal and Error § 42—**

Exceptions to the charge will not be sustained where the charge is without prejudicial error when construed contextually.

APPEAL by defendants from *Phillips, J.,* 12 October 1959 Term, of RICHMOND.

Civil action to recover damages for personal injuries sustained in a collision between a 1956 Chevrolet sedan owned by Harry E. Lawrence and operated by his son, Harry W. Lawrence, in which plaintiff was a guest, and a 1948 Ford pickup truck owned by Mattie Lee Parrish and operated by her husband, Homer Lloyd Parrish.

Defendants Parrish and defendants Lawrence filed separate answers. Defendants Parrish in their answer deny that Homer Lloyd Parrish was negligent in the operation of the pickup truck, allege that the sole, proximate cause of the collision was due to the negligence of Harry W. Lawrence in the operation of the Chevrolet sedan, and plead the contributory negligence of plaintiff as a bar to recovery. Defendants Lawrence in their answer deny that Harry W. Lawrence was negligent, aver that the sole, proximate cause of the collision was the gross negligence of Homer Lloyd Parrish, and plead the contributory negligence of plaintiff as a bar to recovery.

All the parties offered evidence.

The following issues were submitted to the jury, and answered as appear:

"1. Was the plaintiff injured by the negligence of Homer Lloyd Parrish as alleged in the complaint?

ANSWER: Yes.

"2. Was the plaintiff injured by the negligence of Harry W. Lawrence as alleged in the complaint?

ANSWER: Yes.

"3. What amount of damages, if any, is the plaintiff entitled to recover?

ANSWER: $30,000.00."

The following stipulation appears in the record before the charge of the court to the jury: "It was stipulated by counsel representing all the defendants, that if the jury answered the first issue submitted 'Yes,' that the negligence of Homer Lloyd Parrish would be attributed to the defendant, Mattie Lee Parrish, and each would be equally liable for any injuries as the result of such negligence, and that if the jury answered the second issue 'Yes,' that the negligence of Harry W. Lawrence would be attributed to the defendant, Harry E. Lawrence, and each would be equally liable for any injuries as a result of such negligence."

From judgment in accord with the verdict, all the defendants appeal.

*Webb & Lee and W. G. Pittman for plaintiff, appellee, on the appeal of the defendants Lawrence and defendants Parrish.*

*Leath & Blount for Homer Lloyd Parrish and Mattie Lee Parrish defendants, appellants.*

*Smith, Moore, Smith, Schell & Hunter, McNeill Smith, David McK. Clark and Z. V. Morgan for Harry W. Lawrence and Harry E. Lawrence, defendants, appellants.*

. . .PARKER, J.  The instant case was commenced by the issuance of summons on 28 May 1959, which was served on all the defendants, · except Harry E. Lawrence as guardian *ad litem* of his son, Harry W. Lawrence, on 1 June 1959. Summons was issued against Harry E. Lawrence as guardian *ad litem* of his son, Harry W. Lawrence, on 17 July 1959 and served on him the same day. Harry W. Lawrence, by his next friend, Harry E. Lawrence, instituted an action by the issuance of summons on 15 June 1959 in Richmond County Superior Court to recover damages for personal injuries in the collision here against defendants Parrish, and which was served on defendants Parrish the next day. Frank Williams, a passenger in the pickup truck driven by Homer Lloyd Parrish, instituted by the issuance of summons on 26 March 1959 in the same county a similar action against defendants Parrish, and which was served on defendants Parrish the next day. None of these summons were in the record. We had them certified here by the lower court.

Immediately prior to the trial of the instant case Harry W. Lawrence made a motion that the court place his case against defendants Parrish on the civil issue docket for trial before the trial of the instant case and of the *Frank Williams* case, and that plaintiff here and Frank Williams be restrained from bringing their cases to trial, until his case against defendants Parrish is finally determined. The trial court, in its discretion, denied the motion. Harry W. Lawrence assigns this as error, and contends in his brief that any judgment here against both defendants would be *res judicata* in his action against the Parrishes, and no prejudice could come to the plaintiff here if his case is tried first, since she is not a party to it, and that "the trial judge abused his discretion in refusing the continuance."

A motion for a continuance is addressed to the sound discretion of the trial judge, and, in the absence of manifest abuse, his ruling thereon is not reviewable. *Hayes v. Ricard*, 251 N.C. 485, 112 S.E. 2d 123; *Sykes v. Blakey*, 215 N.C. 61, 200 S.E. 910; *Piedmont Wagon Co. v. Bostic*, 118 N.C. 758, 24 S.E. 525.

A trial court is vested with wide discretion in setting for trial and calling for trial cases pending before it. *Jones v. Jones*, 94 N.C. 111; *Abernethy v. Burns*, 206 N.C. 370, 173 S.E. 899; 88 C.J.S., Trial, § 31.

Whether one lawsuit will be held in abeyance to abide the outcome of another rests in the sound discretion of the trial judge, and his action will not be disturbed on appeal, unless the discretion has been abused, for there is power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants. 53 Am. Jur., Trial, §14, §15 and

§16. "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.,* 299 U.S. 248, 81 L. Ed. 153.

Plaintiff in the instant case commenced her action before Harry W. Lawrence did his, and alleged in her complaint that she was grievously injured by his negligence and the negligence of Homer Lloyd Parrish. Our study of the record fails to disclose any unusual or extraordinary circumstances or any clear case of hardship or inequity to Harry W. Lawrence that would have justified the trial judge in continuing plaintiff's case here, and requiring her to sit by with folded arms until Harry W. Lawrence had reached a final determination of his action against Homer Lloyd Parrish and wife. Harry W. Lawrence has not shown that Judge Phillips manifestly abused his discretion in denying his motion. His assignment of error in that respect is overruled. See 88 C.J.S., Trial §33(a), Advancement or Preference of Cases.

During the trial all the defendants offered evidence. All the defendants assign as error the denial of their motions for judgments of nonsuit renewed at the close of all the evidence. Defendants Parrish and defendants Lawrence filed separate briefs.

About 3:45 p. m. on Sunday, 4 January 1959, plaintiff a 20-year-old girl, was a passenger in a Chevrolet automobile driven by her friend, Harry W. Lawrence, and travelling in a westerly direction on the County Home Road near the town of Hamlet. This is a hard surfaced road about 18 feet wide with a marked center line, which has 6 to 8 feet sand and gravel shoulders. At the same time and place Homer Lloyd Parrish, with a passenger, Frank Williams, was driving a pickup truck in an easterly direction on this road. It was a pretty day, and the road was dry. The road at the scene of the collision was fairly level and straight. No other automobile was near the scene of the collision when it occurred, except an automobile some 150 or 200 feet behind Parrish's pickup truck.

Plaintiff's evidence, including the testimony of defendant Harry W. Lawrence called by plaintiff as a witness for herself against the defendants Parrish, and the testimony of John A. Cartwright, a witness for the defendants Lawrence who was travelling some 150 or 200 feet behind the Parrish truck, shows the following facts as to Homer Lloyd Parrish's operation of his pickup truck: At the place where

the Hospital Road and the County Home Road intersect, there is a traffic light with a traffic island. When Parrish turned his truck to enter the County Home Road, he drove over the traffic island, and in turning right into the County Home Road went over to the asphalt, not really an island, more of an abutment, before proceeding down the County Home Road. In going down the road he drove several times over the center line, and just before the collision his truck made a wide sweep over on the left side of the road and went off on the shoulder. When Parrish's truck approached the Lawrence automobile, the Parrish truck was on its left side of the road half off on the left shoulder coming directly toward the Lawrence automobile. The Parrish truck continued to approach the Lawrence automobile in this manner, until the Lawrence automobile was 75 to 100 feet away. This is the testimony of Harry W. Lawrence: "He was coming down my side of the road and was on my right coming directly toward me. I was back down the highway traveling from east going west. This truck was coming at me on my side of the road and half off on my shoulder and was coming at me on my side of the road halfway off my side of the road, and if I had cut this way, it appeared to me at the time that he would have run directly into the side of me; and if I had gone straight, he would have run head-on. The only choice that I had at the time was to go over there to try to get out of his way because he had my side of the highway. I could not say how far he was away when I first saw him, but I do know that I was on my right side of the road. If we did not turn to the side of the road on which the accident happened simultaneously, then I turned first; I do not know exactly which of us turned first. I know that when I turned over there, he was still on my side of the road. At that time I turned, I'd say he was 75 to 80 feet down the road. It could not have been as much as 150 feet." The two automobiles collided in about the middle of the road, according to John A. Cartwright, on Parrish's side of the road, according to plaintiff's own testimony, and the testimony of Frank Williams.

Patrolman J. B. Pierce, a witness for defendants Lawrence, immediately after the collision and at the scene saw Homer Lloyd Parrish, who had a strong odor of alcohol on his breath. In Pierce's written report of his investigation of the collision he stated that Parrish's ability was impaired by reason of the fact he had been drinking.

In the collision Homer Lloyd Parrish suffered, *inter alia*, one broken knee and a badly gashed knee. Some 45 minutes or an hour and 15 minutes after the wreck, Rex Howell, Captain on the Hamlet Police Force and a witness for defendants Lawrence, saw Parrish in

the Hamlet Hospital. When Howell got to the hallway next to the operating room, he heard loud, boisterous and profane language. When Howell went in the operating room, Dr. James asked him to hold Parrish on the operating table as he was trying to sew up his knees and he couldn't keep him still long enough to do it. He smelled the odor of alcohol on Parrish's breath. When Howell came in, Parrish quieted down.

Plaintiff's testimony in respect to the collision is as follows in substance: She and Harry W. Lawrence had been dating each other for three years. It was the last day of her Christmas vacation, for she was to return to college that afternoon. They were riding around this Sunday afternoon and talking. She was sitting about six or seven inches from the door with her knees on the seat facing Harry, who was driving. When Harry yelled "look out," she turned and saw the old Parrish truck about 200 feet away coming down the road cutting to its left. She put her hand over her face, and threw her head down on Harry's chest. She felt Harry's automobile go to the other side of the road. Harry was slowing down, and about that time there was a crash. The crash was on Harry's left side of the road, and Parrish's right side.

Frank Williams, a passenger in the Parrish truck and a witness for plaintiff, testified in substance: When the Parrish truck and the Lawrence automobile meeting each other were about 200 feet apart, the Lawrence automobile was on its left side of the road, and the Parrish truck on its left side of the road. Parrish went back to his side, and Lawrence went back to his side. Then Lawrence came down his lane, and collided right into Parrish, and Parrish pulled his truck to the right. The automobiles collided on Parrish's side of the road.

Homer Lloyd Parrish, called as a witness by plaintiff testified as follows: "At the time I first observed it, the vehicle that was meeting me was on its left hand side, or the south side of the dotted white line. When I first saw the car, I was on the right hand side of the dotted white lines traveling east. When I first saw him, I didn't do anything; and I proceeded on down the road for a short distance. It seemed he didn't see me, and so I went to the left. We were still a short distance away, and he came back to his side so there wasn't room over there for both of us; and I went back to mine. When I went back to my right, he came back over there; and we hit and we wrecked. I saw him when he cut back across to the left side. When he cut back to his left, I was back on my right side of the road. When I saw him, he was coming back to my right. I cut off the road, but there wasn't time to avoid the collision. Part of both vehicles was on the

south side of the shoulder of the highway when the collision occurred. One wheel of each vehicle was on the dirt, the right wheel of mine and the left of his." Homer Lloyd Parrish, after plaintiff rested her case, testified in his own behalf. His testimony then was substantially similar to his testimony as a witness for plaintiff in respect to the operation of the two automobiles immediately prior to the collision.

Harry W. Lawrence offered evidence in his behalf, but did not go back on the stand as a witness for himself.

When defendants made their motions at the close of all the evidence for judgments of involuntary nonsuit, plaintiff is entitled to have her evidence considered in the light most favorable to her. *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492. "Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court," *Brafford v. Cook*, 232 N.C. 699, 62 S.E. 2d 327, and do not justify a nonsuit. *Keaton v. Taxi Co.*, 241 N.C. 589, 86 S.E. 2d 93.

The law is well established in this jurisdiction that in ruling upon a motion for an involuntary judgment of nonsuit, after all the evidence of plaintiff and both defendants is in, the court may consider so much of both defendants' evidence, or the evidence of either of them, as is favorable to plaintiff or tends to clarify or explain evidence offered by plaintiff not inconsistent therewith, but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by plaintiff. *Bundy v. Powell*, 229 N.C. 707, 51 S.E. 2d 307; *Murray v. Wyatt*, 245 N.C. 123, 95 S.E. 2d 541; *King v. Powell*, 252 N.C. 506, 114 S.E. 2d 265. Otherwise, consideration would not be in the light most favorable to plaintiff. *Singletary v. Nixon*, 239 N.C. 634, 80 S.E. 2d 676; *Atkins v. Transportation Co.*, 224 N.C. 688, 32 S.E. 2d 209.

Plaintiff's evidence, and the evidence of the defendants Lawrence favorable to her, considered in the light most favorable to her, tends to show, *inter alia*, that Homer Lloyd Parrish was guilty of negligence *per se*, in operating his pickup truck while under the influence of intoxicating liquor in violation of G.S. 20-138, in failing to drive his automobile on the right half of the highway in violation of G.S. 20-146, and of failing to give to the approaching Lawrence automobile one-half of the main travelled part of the road in violation of G.S. 20-148, and that such negligence caused a collision of his truck and the Lawrence automobile in about the middle of the road, and contributed proximately to plaintiff's injuries, as alleged in her complaint. *Boyd v. Harper*, 250 N.C. 334, 108 S.E. 2d 598; *Hoke v. Grey-*

*hound Corp.*, 226 N.C. 692, 40 S.E. 2d 345. The trial court properly denied Homer Lloyd Parrish's motion for judgment of nonsuit made at the close of all the evidence, and also a similar motion of his wife, Mattie Lee Parrish, by reason of the stipulation they made above set forth, and their assignment of error thereto is overruled.

Plaintiff's evidence and the evidence of defendants Parrish and of defendants Lawrence favorable to her, considered in the light most favorable to her, tends to show, *inter alia,* that Harry W. Lawrence was guilty of negligence *per se* in failing to drive his automobile on the right half of the highway as he was meeting an approaching automobile proceeding in the opposite direction in violation of G.S. 20-146, and of failing to give to the approaching Parrish truck one-half of the main travelled part of the road in violation of G.S. 20-148, and of negligence in failing to keep a proper lookout, *Clark v. Emerson,* 245 N.C. 387, 95 S.E. 2d 880, as alleged in the complaint.

Defendants Lawrence contend in their brief that conceding that the Lawrence automobile was initially on the wrong side of the road, such negligence was insulated by the intervening negligence of the defendant Homer Lloyd Parrish. Such a contention is not tenable. Harry W. Lawrence, according to his own testimony, was travelling 45 miles an hour, and according to the testimony of Frank Williams, a witness for plaintiff, when the two automobiles were about 200 feet apart, the Lawrence automobile was on its left side of the road. Parrish, according to Williams' testimony, was travelling 35 miles an hour. This evidence would warrant a finding by a jury that Harry W. Lawrence, by driving his automobile on his left side of the road under the circumstances above set out, in the exercise of ordinary care, might have reasonably foreseen that he and the approaching Parrish truck would cut back and forth on the road to avoid a collision, and the resulting collision in the middle of the road (testimony of John A. Cartwright, a witness for the Lawrences) followed so quickly and is so connected with Harry W. Lawrence's negligence, that it constituted a direct chain of events resulting from the negligence of Harry W. Lawrence in driving on his left side of the road, and that such negligence on the part of Harry W. Lawrence was a proximate cause of plaintiff's injuries. "No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury." *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 2d 876. A judgment of involuntary nonsuit of plaintiff's case against the defendants Lawrence on the ground that Harry W. Lawrence's negligence was insulated by the intervening negligence of Homer Lloyd Parrish would be improper, because "the test by which the negligent conduct of one is to

be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Butner v. Spease and Spease v. Butner*, 217 N.C. 82, 6 S.E. 2d 808.

Defendants further contend that Harry W. Lawrence was confronted with a sudden emergency, that he acted with due care, and they are entitled to a nonsuit. Such contention is without merit. This principle is not available to defendants Lawrence on their motions for judgment of nonsuit upon the facts here, for the reason that taking plaintiff's evidence as true, as we are compelled to do in considering such a motion (*Polansky v. Insurance Ass'n.*, 238 N.C. 427, 78 S.E. 2d 213), and considering it in the light most favorable to her, Harry W. Lawrence by his own negligence in driving his automobile on the left side of the road under the circumstances above set forth brought about or contributed to the emergency. *Hoke v. Greyhound Corp.*, 227 N.C. 412, 42 S.E. 2d 593.

The trial court properly denied Harry W. Lawrence's motion for judgment of involuntary nonsuit made at the close of all the evidence, and also a similar motion by his father, Harry E. Lawrence, by reason of the stipulation above set forth, and their assignment of error thereto is overruled.

During the cross-examination of Homer Lloyd Parrish, when he was on the stand as an adverse witness for plaintiff, this occurred: Homer Lloyd Parrish admitted he had no North Carolina driver's license. He was then asked by counsel for the Lawrences: "You've been convicted of drunk driving, haven't you?" The trial judge sustained an objection by Parrish's counsel stating it is not competent, he would let him put it in later. To this ruling the defendants Lawrence did not except. After some colloquy between Lawrence's counsel and and the judge, the judge stated in effect that if Parrish had been convicted of drunken driving prior to this occasion or subsequent to it, that would be competent, but a conviction of drunk driving by Parrish on this particular occasion would be incompetent. To this ruling the defendants Lawrence excepted. At this point the jury was sent to its room, and in the jury's absence counsel for the Lawrences asked Parrish: "You have been convicted of driving drunk, haven't you?" He replied: "Yes, sir, in Recorder's Court in Richmond County as a result of this accident, but I have never been convicted before that accident of any traffic laws." Defendants Lawrence assign as error the exclusion of this evidence, contending it was competent for the purpose of impeaching Parrish's credibility as a witness, and they state further in their brief they "do not contend

that the evidence of Parrish's previous unappealed conviction for drunken driving arising out of the occurrence here in controversy should be received as substantive evidence against him." They further assign as error the ruling of the court to the effect that they could not ask the general question if Parrish had been convicted of drunken driving.

. In *Swinson v. Nance,* 219 N.C. 772, 15 S.E. 2d 284, on cross-examination, the defense attorney attempted to ask one of the plaintiffs in an action for negligence growing out of an automobile collision if he had not been convicted of reckless driving as a result of the accident. The plaintiff would have answered in the affirmative. Exclusion of the evidence of conviction was held proper, though counsel for defendant stated that he asked the question solely for the purpose of impeaching the witness. This Court said: "Passing the fact that the question was not renewed when the jury returned, we think its exclusion was proper anyway. If the sole purpose was to impeach the witness by showing that he had been convicted of a criminal offense, the question might have been formulated differently. The question tied the testimony to the transaction then under civil investigation and the effect, if the evidence should be admitted, was to bring before the jury on the question of contributory negligence the fact that the plaintiff had been convicted of careless driving by another jury because of the same act of negligence. The situation is novel as far as we can discover, but we are convinced that the exclusion of the evidence was proper, on this principle *ut res magis valeat quam pereat.*" In reference to this point in the *Swinson* case, this comment appears in 34 N. C. Law Review, p. 291, note 52: "While the evidence was offered for the purposes of impeachment, it would seem that the exclusion of the evidence, had it been offered on the issue of the plaintiff's negligence, should follow *a fortiori.* Cf. *Warren v. Pilot Life Insurance Co.,* 215 N.C. 402, 2 S.E. 2d 17 (1939)."

*Moseley v. Ewing,* (Supreme Court of Florida, 1955), 79 So. 2d 776, was an action to recover damages for personal injuries sustained by plaintiff, when the automobile he was driving was hit from the rear by an automobile driven by defendant. On cross-examination of defendant by plaintiff's counsel, defendant, over his objection, was compelled to answer that he had been convicted of reckless driving and fined as the result of such conviction. The Supreme Court of Florida held that the admission of this evidence over the defendant's objection constituted reversible error, and ordered a new trial. See also *Eggers v. Phillips Hardware Co.,* (Supreme Court of Florida, 1956), 88 So. 2d 507.

WATTERS v. PARRISH.

*Sherwood v. Murray,* (Civil Appeals of Texas, 1950), 233 S.W. 2d 879, was an action for damages growing out of a collision between two automobiles. Plaintiff was a guest in an automobile being driven by one Al Hoffman. Hoffman testified he did not stop at the stop sign on Blacker Street before entering Stanton Street. On cross-examination counsel asked him: "As a matter of fact, you forfeited a bond you put up in the police station, didn't you?" The court sustained an objection to the question. It was a fact that Hoffman did put up a sum of money as a bond and forfeited it by failure to appear. The Court in its opinion said: "Evidence that Hoffman had forfeited a bond he had put up at the police station was inadmissible for any purpose. . . . By the great weight of authority even evidence of a conviction in a criminal prosecution for the very acts which constitute the negligence sought to be established in a civil suit as the basis of liability is not admissible unless such conviction is based on a plea of guilty. See Annotations, 31 A.L.R. 262; 57 A.L.R. 504; 80 A.L.R. 1145. There are a few authorities holding such evidence admissible to substantiate evidence as to the defendant's action. See 9 Blashfield Cyc. of Automobile Law and Procedure, p. 641, Sec. 6196. *However, we have found no authority holding evidence of such conviction admissible for the purpose of impeaching the witness.*" (Emphasis ours).

*Johnson v. Empire Machinery Co.,* 256 F. 2d 479, and *Dunham v. Pannell,* (1959), 263 F. 2d 725, are distinguishable. In the *Johnson* case, Cooper, the defendant's driver, several days after the accident paid a fine without insisting on a trial for following too closely. In the *Dunham* case, the truck driver signed a statement, admitting guilt to charge of a traffic offense. In *McMullen v. Cannon,* (Appellate Court of Indiana, 1958), 150 N.E. 2d 765, relied on by defendants Lawrence, plaintiff, on cross-examination, was asked whether he had been convicted of drunk driving for the purpose of impeachment. The court sustained an objection to the question. Plaintiff was then asked: "On this particular date were you operating your motor vehicle under the influence of liquor?" To which he replied "I was not." The Court ordered a new trial holding the question asked, to which an objection was sustained, was proper. That was a different situation from what we have here. In the instant case Parrish replied that he had been convicted of driving drunk on the occasion when the collision occurred which formed the basis of the instant case, but that he had never been convicted before that accident of any traffic laws. There is no evidence so far as the record discloses that he has been convicted of the violation of any traffic laws since the collision here. Cer-

tainly, driving drunk is a violation of the traffic laws. See Annotation, 20 A.L.R. 2d 1217: "Cross-examination of automobile driver in civil action with respect to arrest or conviction for previous traffic offenses."

Following our own decision of *Swinson v. Nance, supra,* with which *Moseley v. Ewing, supra,* seems to be in accord, we hold that the court properly excluded the evidence that Parrish had been convicted of driving his truck while drunk on the occasion when the collision here occurred. To have admitted it in evidence for the purpose of impeaching Parrish might, and probably would have caused the jury to give such conviction undue weight in this action, wherein plaintiff was seriously injured and asking for large damages. The judge told counsel for defendants Lawrence in effect he could ask Parrish if he had been convicted of drunk driving before or subsequent to the collision here. He declined to ask questions to that effect. If he had asked such questions, there is nothing in the record to show that he would have received any benefit thereby, and the burden is upon defendants Lawrence to show prejudicial error. *Johnson v. Heath,* 240 N.C. 255, 81 S.E. 2d 657. The assignments of error by defendants Lawrence in respect to these matters are overruled.

Defendants Lawrence assign as error number 3 that the judge just before court recessed in the afternoon sustained upon objection of Parrish's counsel this question asked by their counsel on cross-examination of plaintiff: "If you didn't tell your father it was not Harry's fault?" This assignment of error will be disregarded, because it is not supported by an exception in the record, but only by an exception appearing in the assignment of error. *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223. In addition it is without merit because upon the reconvening of court the following morning the judge reversed himself, and the prosecutrix answered the question as follows: "I have told my father that I don't blame Harry."

The other assignments of error by the defendants Lawrence as to the evidence, brought forward and discussed in their brief, are not meritorious and all are overruled.

Defendants Parrish have no assignment of error and no exception as to the evidence.

At the close of all the evidence and before the charge defendants Lawrence tendered issues, as did defendants Parrish. The court submitted to the jury the issues tendered by defendants Lawrence. The issues tendered by defendants Parrish included an issue as to whether or not plaintiff by her own negligence contributed to her injuries. Defendants Parrish assign as error the failure of the court to submit an issue of contributory negligence.

The evidence upon which defendants Parrish rely in respect to this assignment of error is contained primarily in the testimony of plaintiff, and is to this effect: She was sitting with her knees on the seat talking to Harry W. Lawrence, and he was talking to her. She was looking at Harry, and paying no attention to the road ahead or his operation of the automobile. She was paying attention to what Harry was saying, and she assumes Harry was paying attention to what she was saying. She did not tell him to look at the road. Defendants Parrish contend if she had been watching the road, she would have seen that Harry W. Lawrence was driving on his left side of the road, and could have warned him, and her failure to do so was contributory negligence.

Plaintiff's testimony is further to this effect: It was a pretty day and the road was dry. The speed of the Lawrence automobile was about 40 miles per hour: Harry W. Lawrence testified his speed was 45 miles an hour. She did not observe anything that caused her to have any complaint about the way Harry was driving at the time the collision occurred.

In *Gardiner v. Travelers Indemnity Co.*, (Court of Appeals of Louisiana), 11 So. 2d 61, the Court said: "Ordinarily, a guest may rely on the driver to keep a proper lookout, unless the danger is obvious, or is known to the guest, and is apparently not known to the driver. The guest cannot be expected to keep the same careful lookout at all times as the driver is required to keep, and the guest is necessarily required to intrust a great part of his safety to the driver. Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 4, p. 202, §2411 *et seq.*; 5 Am. Jur., Automobiles, §476, p. 770." In our Perm. Ed. of Blashfield the page is 541.

Granting that it is the duty of a guest passenger in an automobile to exercise ordinary care for his own safety, and as one item thereof to maintain some sort of lookout (*Samuels v. Bowers*, 232 N.C. 149, 59 S.E. 2d 787), what constitutes the exercise of ordinary care on the part of the guest depends on circumstances. The place occupied by the guest is important in determining whether he exercised reasonable care, for one on the front seat may have a far better opportunity of discovering danger ahead than one on the back seat. 5A Am. Jur., Automobiles and Highway Traffic, § 795.

In *Darling v. Browning*, 120 W. Va. 666, 200 S.E. 737, plaintiff was a guest passenger riding on the front seat. The Court said: "In the course of the ordinary operation of an automobile under circumstances and conditions which may be considered usual for the street or road being traveled by it, guests in the automobile are not required to be con-

26—252

stantly at the height of attention and alertness in order to raise an instant alarm if danger should arise. Such strictness of requirement would impose an exaction, destructive of the reasonable use and enjoyment of automobiles. A guest must not be oblivious to danger but, on the other hand, the law does not require that he be annoyingly active in vigilance and in proclaiming notice of danger. Such conduct may readily result in more harm than good." To the same effect see 5A Am. Jur., Automobiles and Highway Traffic, §794. See also 60 C.J.S., Motor Vehicles, p. 545, wherein it is said: "A guest. . . is not bound . . . to pay constant attention to the management of the car." In *Lindley v. Sink*, 218 Ind. 1, 30 N.E. 2d 456, 2 A.L.R. 2d 772, the Court said: "Ordinarily a passenger in an automobile, having no control over the management of the automobile, may rely upon the assumption that the driver will exercise proper care and caution, and, therefore, under the facts and circumstances of the particular case the passenger may be exercising reasonable care for his safety although not keeping a lookout for other cars approaching." See also *White v. State Farm Mut. Auto Ins. Co.*, 222 La. 994, 64 So. 2d 245, 42 A.L.R. 2d 338 — headnote 4 in A.L.R. See also 5A Am. Jur., Automobiles and Highway Traffic, § 795.

If Harry W. Lawrence's automobile was on the left side of the road, there is nothing in the record to show for what distance it had been on that side, and nothing to show plaintiff could have seen that unless she had been constantly alert. The road was dry, the time was 3:45 p. m., there was nothing to obscure the vision of the driver, Harry W. Lawrence, and he was driving from 40 to 45 miles an hour on a road that at and near the scene of collision was fairly level and straight. Harry W. Lawrence testified he had just come out of a curve, he could see the highway for several hundred yards, and he had both hands on the wheel looking straight ahead. Homer Lloyd Parrish testified he came out of a curve at the scene of the collision. It is true she testified she was facing Harry W. Lawrence talking to him, paying no attention to the road ahead or his operation of the automobile, but she also testified that he was driving 40 miles an hour, and that she observed nothing that caused her to complain about the way Harry was driving at the time the collision occurred. As she was aware of these facts, this is not a case where she surrendered herself completely to the care of the driver. In our opinion, there is no evidence tending to show that plaintiff failed to exercise ordinary care for her safety which proximately contributed to her injury. The court properly refused to submit the issue of contributory negligence tendered by defendants Parrish. The case of *Hunt v. Wooten*, 238 N.C. 42, 76 S.E.

2d 326, contains many similar facts, and no issue of contributory negligence was submitted. For other. cases where no issue of contributory negligence was submitted see, *Norfleet v. Hall*, 204 ·N.C. 573, 169 S.E. 143; *York v. York*, 212 N.C. 695, 194 S.E. 486.

All assignments of error to the charge by defendants Parrish and defendants Lawrence are to the first two issues, none by any of the defendants to the damage issue. All these assignments of error brought forward and discussed in the briefs of the respective parties have been examined, and all are untenable and all are overruled. The court gave to the jury the prayers for instructions prayed by defendants Lawrence, which take up according to quotation marks in the charge seven pages of the charge. There is nothing in the record to indicate that the court refused any such prayer of defendants Lawrence, or changed a word of these prayers for instructions. It would seem that such long prayers for instructions covered every aspect of the law and facts, as contended by defendants Lawrence during the trial.

Defendants Lawrence assign as errors certain parts of the charge which they contend contain improper comments by the judge on the weight and sufficiency of the evidence, and show bias on the part of the judge which deprived them of a fair trial. Defendants Parrish make no such contentions. We find nothing in the record and charge to support such contentions as to the conduct and language of the able and learned jurist who presided at the trial.

All assignments of error brought forward and discussed in the briefs of defendants Parrish and of defendants Lawrence are overruled. In the trial below we find as to defendants Parrish and as to defendants Lawrence

No error.