SHIRLEY K. HUTCHENS, INDIVIDUALLY; SHIRLEY K. HUTCHENS, AD-MINISTRATRIX OF THE ESTATE OF OTIS WAYNE HUTCHENS; MARK WAYNE HUTCHENS, BY AND THROUGH HIS GUARDIAN AD LITEM,SHIRLEY K. HUTCHENS v. CICERO HANKINS AND WIFE, MARTHA HANKINS, T/A YOUNGER BROTHERS LOUNGE; DONNY RAY FLETCHER AND WELDON EVERETT

No. 8217SC514

(Filed 21 June 1983)

1. **Automobiles and Other Vehicles §§ 43, 50.2; Intoxicating Liquor § 24; Negligence § 1.3— violation of statute regulating sale of intoxicating liquors—grounds for action for negligence**

   The general purposes of G.S. 18A-34 would appear to be (1) the protection of the customer from the adverse consequences of intoxication and (2) the protection of the community at large from the possible injurious consequences of contact with an intoxicated person; therefore, the Court adopted the requirements of G.S. 18A-34 as a minimum standard of conduct for defendant-licensees, and held that a violation of this statute can give rise to an action for negligence against the licensee by a member of the public who has been injured by the intoxicated customer.

2. **Automobiles and Other Vehicles §§ 43, 50.2; Intoxicating Liquor § 24; Negligence § 1.3— sale of alcohol to intoxicated person—requirement that licensee knew or should have known**

   In order for a licensee to violate G.S. 18A-34, prohibiting the sale of alcohol to obviously intoxicated persons, there must be a sale to an intoxicated person whom the licensee knew to be in an intoxicated condition. Plaintiffs' allegations that the licensee sold a beer to an individual defendant while he was intoxicated under circumstances indicating that defendants knew or should have known that he was intoxicated were sufficient to state a claim for negligence *per se* and to withstand defendants' motion to dismiss.

1

**3. Automobiles and Other Vehicles § 50.2; Intoxicating Liquor § 24; Negligence § 8.1— sale of alcohol to intoxicated customer—proximate cause of subsequent automobile accident**

The consequences of serving liquor to an intoxicated motorist, in light of the universal use of automobiles and the increasing frequency of accidents involving drunk drivers, are not reasonably unforeseeable events so as to insulate a tavern owner who knew or should have known that his patron intended to drive a motor vehicle from liability as a matter of law. The act of the patron in consuming the alcohol may certainly be considered a contributing factor, but whether it is such an intervening cause as would break the chain of foreseeable consequences emanating from the tavern owner's negligent serving is a question of fact to be determined by a jury.

APPEAL by plaintiff from *Long, Judge.* Judgment entered 8 March 1982 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 18 March 1983.

The plaintiffs' action against the defendants Cicero and Martha Hankins, doing business as Younger Brothers Lounge, for tortious injury and death sustained by plaintiffs as a result of an automobile collision with an intoxicated patron of Younger Brothers Lounge was dismissed pursuant to Rule 12(b)(6) of the Rules of Civil Procedure for failure to state a claim upon which relief may be granted, and the plaintiffs have appealed.

*Bethea, Robinson, Moore & Sands, by Alexander P. Sands, III, for plaintiff appellants.*

*Benjamin R. Wrenn and Albert J. Post, for defendant appellees.*

JOHNSON, Judge.

The sole question presented by the motion to dismiss is whether a common law dram shop liability exists in North Carolina for injuries or death sustained by innocent third parties in an automobile collision with the customer of a tavern who was sold alcoholic beverages while in an intoxicated condition. For the reasons set forth below, we hold that a licensed provider of alcoholic beverages for on-premises consumption may be held liable for injuries or damages proximately resulting from the acts of persons to whom beverages were illegally furnished while intoxicated.

I

This action for personal injuries and death was instituted by Shirley K. Hutchens as Administratrix of the Estate of Otis Wayne Hutchens, individually, and as Guardian Ad Litem for Mark Wayne Hutchens, her minor son. Otis Wayne Hutchens was killed, and Shirley K. Hutchens, his wife, and Mark Wayne Hutchens, their minor son, were severely injured when the Hutchens automobile collided head-on with an automobile driven by Donnie Ray Fletcher, and owned by Weldon Everett. This action was instituted against Fletcher and Everett, and also against Cicero Hankins and his wife, Martha Hankins, owners and operators of Younger Brothers Lounge.

Younger Brothers Lounge is situated at the intersection of Freeway Drive and U.S. 29 Business, near the city of Reidsville, North Carolina. The Lounge provided a parking lot for its customers, and was licensed by the State of North Carolina and permitted to sell at retail beer to customers for on-premises consumption.

The complaint alleged that on 19 March 1981, prior to the collision, Donny Ray Fletcher purchased and consumed on the premises of Younger Brothers a large number of beers over a period of several hours; that Fletcher became intoxicated, and as a result, negligently operated his automobile so as to cause the head-on collision with the plaintiffs' automobile some 15 minutes after leaving Younger Brothers Lounge. At the time of the accident, Fletcher had a blood alcohol content of .16% by weight, which is prima facie evidence that Fletcher was driving under the influence of intoxicating liquor. G.S. 20-138(b).

In the second cause of action, plaintiffs allege that as a result of Younger Brothers' furnishing beer and Fletcher's consumption of it while on the premises, Fletcher became intoxicated and that the furnishing of beer was a proximate cause of the collision with plaintiffs. Paragraph 7 alleges further that defendants were negligent in furnishing beer to Fletcher in that:

A. They failed to exercise reasonable care under the circumstances then existing;

B. That they furnished beer to Donny Ray Fletcher when he was in such a condition as to be deprived of his willpower and responsibility for his behavior;

C. That they knew or should have known that Donny Ray Fletcher habitually became intoxicated and drove automobiles in a negligent manner;

D. They violated G.S. 18A-34 when they sold beer to Donny Ray Fletcher;

E. They engaged in a course of conduct while operating Younger Brothers that they knew or should have known, would lead to the death or serious injuries, of innocent third parties injured by drivers of automobiles who became intoxicated at their premises.

The complaint also alleges that the negligence of defendants was wanton and willful and, as such, entitles plaintiffs to recover punitive damages in addition to the compensatory damages requested for the injuries received as a result of the automobile collision. Thus, the complaint presents two theories of negligent conduct: (1) a failure to exercise due care to avoid a reasonably foreseeable risk of harm to innocent third parties upon the highways by the serving of alcoholic beverages to an obviously intoxicated person by one who knows or should know that such intoxicated person habitually became intoxicated and drove automobiles in a negligent manner, and (2) the sale of alcoholic beverages to Fletcher while he was intoxicated in violation of G.S. 18A-34 as constituting negligence *per se.* G.S. 18A-34 (a), in effect at the time of plaintiffs' injury, provides:

No holder of a license or permit authorizing the sale at retail of malt beverages or wine (fortified or unfortified) for consumption on or off premises where sold, or any servant, agent, or employee of the licensee, shall do any of the following upon the licensed premises;

(2) Knowingly sell such beverages to any person while such person is in an intoxicated condition.[1]

---

1. A statutory duty upon a licensee or permittee not to sell such beverages to an intoxicated person or minor has existed in some form in North Carolina since enactment of the Beverage Control Act of 1939. *See* G.S. 18-78.1(1) & (2) (repealed by Session Laws, 1971).

A violation of G.S. 18A-34(a)(2) constitutes a misdemeanor, punishable by fine, imprisonment, or both. G.S. 18A-56.

Voluntary dismissals, with prejudice, have been taken against defendants Fletcher and Everett, and the cause of action against them is not the subject of this appeal. The sole issue presented by the dismissal of plaintiffs' action is whether civil liability may be imposed upon a vendor of alcoholic beverages for providing alcoholic drinks to an intoxicated customer who, as a result of intoxication, injures third persons. Since the following issues are not presented in the case under discussion, we do not decide whether, under similar circumstances, (1) a noncommercial furnisher of alcoholic beverages may be subject to civil liability; (2) whether a person who is served alcoholic beverages may recover for injuries suffered as a result of such sale or furnishing; or (3) whether off-premises retailers may be held civilly liable for sales or furnishing of alcohol to intoxicated customers.

II

Under the common law rule it was not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and no cause of action existed against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule being that the drinking of the liquor, not the remote furnishing of it, was the proximate cause of the injury. *See* 48 C.J.S., Intoxicating Liquors, § 430 (1947); 45 Am. Jur. 2d, Intoxicating Liquor, § 553 (1969); 97 A.L.R. 3d 528, § 2 (1980). However, the question of civil dram shop liability is apparently one of first impression in North Carolina. Our research has disclosed no judicial decision addressing the question of dram shop liability under general principles of tort law and no case in which a claim of negligence has been predicated upon a violation

In 1981, Chapter 18A was repealed, and in its place Chapter 18B was substituted. A similar provision was enacted, § 18B-305(a), which provides: It shall be unlawful for a permittee or his employee or for an ABC store employee to knowingly sell or give alcoholic beverages to any person who is intoxicated. G.S. 18B-102(b) provides that violation of any provision of Chapter 18B, Regulation of Alcoholic Beverages, shall constitute a misdemeanor, punishable by fine, imprisonment for not more than two years, or both.

of G.S. 18A-34 or its predecessor statute. In fact, these statutes have not previously been construed by our courts.[2]

Other jurisdictions have dealt with the question in three separate ways. Approximately twenty-one states have legislatively enacted a "Civil Damages Act" or a "Dram Shop Act," which statutorily provides a cause of action for injuries resulting from the sales of alcoholic beverages to intoxicated customers who injure third persons.[3] At the time of plaintiffs' injuries in 1981, no comparable dram shop legislation had been enacted in North Carolina. However, we note here that the North Carolina General Assembly has recently amended Chapter 18B of the General Statutes to provide dram shop liability for negligent sales of alcoholic beverages to underaged persons for injuries proximately caused by the underaged driver's negligent operation of an automobile while impaired by an alcoholic beverage, as part of the Safe Roads Act of 1983. See G.S. 18B-121 et seq. (Session Laws, 1983). As originally proposed, the Act included a provision creating dram shop liability for sales to intoxicated persons. Section 41.1 of the Safe Roads Act of 1983 specifically states:

> The original inclusion and ultimate deletion in the course of passing this act of statutory liability for certain persons who sell or furnish alcoholic beverages to intoxicated persons does not reflect any legislative intent one way or the other with respect to the issue of civil liability for negligence by persons who sell or furnish those beverages to such persons.

In light of this express declaration of "no legislative intent" to include or preclude liability for sales to intoxicated persons we will treat the issue as have courts in those jurisdictions which either

---

2. In a recent decision applying North Carolina law, the Fourth Circuit Court of Appeals concluded that under the law of torts as developed by our Supreme Court, civil liability will be imposed on a licensee who violates a law prohibiting the sale of alcoholic beverages to a person known to be intoxicated. *Chastain v. Litton Systems, Inc.*, 694 F. 2d 957 (4th Cir. 1982). We agree with this analysis. See discussion, *infra*, Part III.

3. For discussion and examples of some current dram shop acts *see generally* Comment, 23 S.D.L. Rev. 227 (1978) and Note, 35 Ohio St. L.J. 630 (1974). Many of these statutes limit (1) the class of plaintiffs who may recover; (2) the maximum monetary recovery possible; and (3) the period of limitations during which action may be commenced. *See e.g.* Ill. Rev. Stat. Chapter 43 § 135 (Supp. 1977).

do not have Civil Damages or Dram Shop Acts, or whose acts were found inapplicable to the situation presented.

In recent years only a handful of courts have continued to follow the old rule of nonliability and refused to allow the injured person to recover from the liquor supplier.[4] Two rationales are commonly advanced to support this rule. First, the proximate cause of both the patron's intoxication and the subsequent injury to the third party was held to be the consumption of the liquor, not its sale or furnishing. Second, even if the sale or furnishing were found to have caused the patron's intoxication, the subsequent injury to a third party was held to be an unforeseeable result of the furnishing of the intoxicating beverage. The common law rule was succinctly stated in the oft-quoted passage from *State for Use of Joyce v. Hatfield*, 197 Md. 249, 254, 78 A. 2d 754, 756 (Md. App. 1951):

> Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for "causing" intoxication of the person whose negligent or willful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between the sale of liquor and a tort committed by a buyer who has drunk the liquor.

The rules rests in part on the further assumption that it is not a tort to sell liquor to an able-bodied man, since the liquor vending business is legitimate and the purchaser is deemed to be responsible.[5] The other common justification for adherence to the old

---

4. ARIZONA: *Lewis v. Wolf*, 122 Ariz. 567, 596 P. 2d 705 (Ct. App. 1979); ARKANSAS: *Carr v. Turner*, 238 Ark. 889, 385 S.W. 2d 656 (1965); CONNECTICUT: *Slicer v. Quigley*, 180 Conn. 252, 429 A. 2d 855 (Supp. Ct. 1980); GEORGIA: *Keaton v. Kroger Co.*, 143 Ga. App. 23, 237 S.E. 2d 443 (Ga. App. 1977); MARYLAND: *Felder v. Butler*, 292 Md. 174, 438 A. 2d 494 (1981); MISSOURI: *Alsup v. Garvin-Wienke, Inc.*, 579 F. 2d 461 (8th Cir. 1978) (Applying Missouri law); NEBRASKA: *Holmes v. Circo*, 196 Neb. 496, 244 N.W. 2d 65 (1976); NEVADA: *Hamm v. Carson City Nugett, Inc.*, 85 Nev. 99, 450 P. 2d 358 (Nev. 1969); WISCONSIN: *Olsen v. Copeland*, 90 Wis. 2d 483, 280 N.W. 2d 178 (1979).

5. This principle was stated in *Meade v. Freeman*, 93 Idaho 389, 462 P. 2d 54 (1969), a decision relied upon in many cases denying liability. However, *Meade* itself was recently expressly overruled in *Alegria v. Payonk*, 101 Idaho 617, 619 P. 2d 135 (1980), where the court stated that: "It is of pivotal significance in this case that

rule is that, in the final analysis, the controlling consideration is one of public policy, and the decision as to liability should be left to the legislature. *See e.g. Holmes v. Circo, supra.* Defendant contends that the reasoning in these decisions supports the dismissal of plaintiffs' claims and urges that the common law rule of non-liability be adopted by this Court.

Plaintiff's principal contention on appeal is that the North Carolina General Assembly, by enacting G.S. 18A-34, established a statutory duty not to sell alcoholic beverages to an intoxicated person, that the statute was enacted not only to protect the intoxicated person, but also for the protection of the safety of the general public, including the deceased and plaintiffs' herein, and that the conduct of defendants, in violating this safety statute, constitutes negligence *per se* sufficient to give rise to a cause of action. Plaintiff urges that this Court reach the same decision as the courts (1) that have imposed civil liability on a licensee who violates a liquor control law prohibiting the sale of alcoholic beverages to a person known to be intoxicated and (2) have determined that the furnishing of alcoholic beverages is not causally remote, but rather, may be a proximate cause of the consequential injuries suffered by third persons, as the better reasoned approach to the question of civil dram shop liability.

Most state and federal courts that have considered these issues since 1960 have reevaluated and rejected as patently unsound the rule that a seller cannot be held liable for furnishing alcoholic beverages to an intoxicated or minor patron who injures a third person on the grounds that sale or service is causally remote from the subsequent injurious conduct of the patron. A substantial majority have decided that the furnishing of alcoholic beverages may be a proximate cause of such injuries and that liability may be imposed upon the vendor in favor of the injured third person, and nearly every court recognizing such a claim for relief against a licensed vendor has premised the action for negligence upon the violation of statutes imposing a duty upon

respondents are persons and entities engaged in the daily business of selling intoxicants by the drink, and to whom a jury might reasonably attribute a conscious awareness of the number of drinks sold to and consumed by the minor Payonk as well as the effect such consumption would have on one particularly susceptible to the incapacitating effects of alcohol due to physical and mental immaturity." *Id.* at 620 n. 1, 619 P. 2d at 138.

Hutchens v. Hankins

licensees to refrain from selling or serving alcoholic beverages to a visibly intoxicated person.[6]

The two leading cases abrogating or modifying the common law rule are *Waynick v. Chicago's Last Department Store*, 269 F. 2d 322, 77 A.L.R. 2d 1260 (7th Cir. 1959), *cert. denied*, 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed. 2d 554 (1960) and *Rappaport v. Nichols, supra.* In *Waynick*, after heavy drinking in an Illinois tavern, the intoxicated patron drove into Michigan, where his negligent operation of his automobile caused an accident, resulting in serious injuries to the plaintiffs. The court reasoned that neither the Illinois nor Michigan Civil Damage Acts applied extrater-

---

6. ALASKA: *Vance v. United States*, 355 F. Supp. 756 (D. Alaska 1973); CALIFORNIA: *Vesely v. Sager*, 5 Cal. 3d 153, 95 Cal. Rptr. 623, 486 P. 2d 151 (1971); DELAWARE: *Taylor v. Ruiz*, 394 A. 2d 765 (Del. Super. 1978); DISTRICT OF COLUMBIA: *Marusa v. District of Columbia*, 484 F. 2d 828 (D.C. Cir. 1973) (Shooting victim allowed to recover from bar owner for negligent conduct of intoxicated patron); FLORIDA: *Prevatt v. McClennan*, 201 So. 2d 780 (Fla. App. 1967); *Davis v. Shiappacossee*, 155 So. 2d 365 (Fla. 1963) (Violation of statutory prohibition of sale to minor); HAWAII: *Ono v. Applegate*, 612 P. 2d 533 (1980); IDAHO: *Alegria v. Payonk*, 101 Idaho 617, 619 P. 2d 135 (1980); INDIANA: *Elder v. Fisher*, 247 Ind. 598, 217 N.E. 2d 847 (1966) (Violation of statutory prohibition of sale to minor); ILLINOIS: *Colligan v. Cousar*, 38 Ill. App. 2d 392, 187 N.E. 2d 292 (1963); IOWA: *Lewis v. State*, 256 N.W. 2d 181 (Iowa 1977); KENTUCKY: *Pike v. George*, 434 S.W. 2d 626 (Ky. App. 1968) (Violation of statutory prohibition of sale to minor); MASSACHUSETTS: *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E. 2d 18 (1968); MICHIGAN: *Grasser v. Fleming*, 74 Mich. App. 338, 253 N.W. 2d 757 (1977) (Sale to compulsive alcoholic contrary to private agreement); *Thaut v. Finley*, 50 Mich. App. 611, 213 N.W. 2d 820 (1973) (Social host serving minor in violation of penal statute); MINNESOTA: *Trail v. Christain*, 298 Minn. 101, 213 N.W. 2d 618 (1973); MISSISSIPPI: *Munford, Inc. v. Peterson*, 368 So. 2d 213 (Miss. 1979); MONTANA: *Deeds v. United States*, 306 F. Supp. 348 (D. Mont. 1969) (Violation of statutory prohibition of sale to minor); NEW HAMPSHIRE: *Ramsey v. Anctil*, 106 N.H. 375, 211 A. 2d 900 (1965) (Patron who injured himself while inebriated); NEW JERSEY: *Rappaport v. Nichols*, 31 N.J. 188, 156 A. 2d 1, 75 A.L.R. 2d 821 (1959); NEW MEXICO: *Lopez v. Maez*, 98 N.M. 625, 651 P. 2d 1269 (N.M. 1982); NEW YORK: *Berkeley v. Park*, 47 Misc. 2d 381, 262 N.Y.S. 2d 290 (1965); OHIO: *Mason v. Roberts*, 33 Ohio St. 2d 29, 294 N.E. 2d 884 (1973) (Cause of action recognized upon general tort principles of negligence); OREGON: *Campell v. Carpenter*, 279 Or. 237, 566 P. 2d 893 (1977) (Cause of action recognized upon general tort principles of negligence); PENNSYLVANIA: *Jardine v. Upper Darby Lodge*, 413 Pa. 626, 198 A. 2d 550 (1964); SOUTH DAKOTA: *Walz v. City of Hudson*, 327 N.W. 2d 120 (S.D. 1982); TENNESSEE: *Mitchell v. Ketner*, 54 Tenn. App. 656, 393 S.W. 2d 755 (1964) (Cause of action recognized upon general tort principles of negligence); WASHINGTON: *Callan v. O'Neil*, 20 Wash. App. 32, 578 P. 2d 890 (1978) (Violation of statute prohibiting sale to minor). *But see*, LOUISIANA: *Thrasher v. Leggett*, 373 So. 2d 494 (La. 1979) (Loud and aggressive inebriated bar patron who is injured while being "bounced" from bar may not recover from bar owner for injuries suffered).

ritorially and therefore a vacuum existed in the law. However, the court determined that the Illinois statute prohibiting the sale of liquor to an intoxicated person was enacted "for the protection of any member of the public who might be injured or damaged as a result of the drunkenness to which the particular sale of alcoholic liquor contributes" and that the statute imposed a duty upon the sellers of alcoholic beverages in favor of those who might be injured as a result of a violation of the statute. Holding that a common law action would lie, the court, citing traditional tort principles of duty and proximate cause, concluded that serving the patron set into motion a foreseeable chain of events for which the tavern keepers may be held responsible. 269 F. 2d at 325-26. *Rappaport* involved a wrongful death action by a widow against the operators of four taverns for selling liquor to an intoxicated minor whose negligent operation of his automobile resulted in the fatal accident. At the time of the accident, New Jersey had no Civil Damage Act. The New Jersey Supreme Court stated:

> Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through the action of the intoxicated person or the minor.

31 N.J. at 201, 156 A. 2d at 8. The court determined that the legislature, having recognized the unreasonable risk of harm to others through action of the intoxicated person or the minor, explicitly prohibited such sales by both a criminal statute and administrative regulations, concluding that these broad restrictions were intended to protect members of the general public.

> When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent.

31 N.J. at 202, 156 A. 2d at 8. After citing recent government reports on the frequency and severity of accidents caused by intoxicated drivers, the court stated, "[i]f the patron is a minor or is intoxicated when served, the tavern keeper's sale to him is

unlawful; and if the circumstances are such that the tavern keeper knows or should know that the patron is a minor or is intoxicated, his service to him may also constitute common law negligence." *Id.* at 202, 156 A. 2d at 9. Finally, the court rejected the defendants' argument that their conduct, if negligent, was not a proximate cause of the plaintiff's injuries.

> But a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries . . .
>
> . . . The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability . . .
>
> . . . Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination . . .
>
> . . . And a jury could also reasonably find that Nichols' negligent operation of his motor vehicle after leaving the defendants' taverns was a normal incident of the risk they created, or an event which they could reasonably have foreseen, and that consequently there was no effective breach in the chain of causation. (Citations omitted.)

*Id.* at 203-04, 156 A. 2d at 9. On the basis of the foregoing, the court concluded that it would not, as a matter of law, hold that there could have been no proximate causal relation between the defendants' unlawful and negligent conduct and the plaintiff's injuries.

We agree with the reasoning of the Supreme Court of California in *Vesely v. Sager, supra,* 5 Cal. 3d at 163-64, 95 Cal. Rptr. at 630-31, 486 P. 2d at 158-59, as it held:

> To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule . . . [A]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct . . .

. . . Moreover, "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." . . .

. . . Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the *furnishing* of an alcoholic beverage to an intoxicated person *may be a proximate cause* of injuries inflicted by that individual upon a third person. *If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent.* (Citations omitted) (Emphasis supplied.)

The principles of proximate cause articulated by the *Vesely* court are substantially identical to those developed by our Supreme Court in *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970); and *Watters v. Parrish,* 252 N.C. 787, 115 S.E. 2d 1 (1960).[7] The reasoning in *Waynick, Rappaport* and *Vesely,* combined with the clear modern trend towards liability demonstrated by the authorities cited in note 6, *supra,* persuades this Court to allow persons injured by an intoxicated tavern customer the right to recover from the tavern that provided liquor to the customer upon proof of the tavern owner's negligence. The elements of the common law dram shop action in this jurisdiction are set out below.

### III

Under the common law, a person who has sustained injuries due to the negligent conduct of another may recover against the tortfeasor provided that the negligent behavior was the proximate cause of the injuries suffered. *See e.g. Sutton v. Duke,*

---

7. These decisions will be discussed more fully in Part III, *infra.*

*supra;*Restatement (Second) of Torts § 281 (1965). The elements of common law negligence have been summarized by W. Prosser in The Law of Torts, § 30, p. 143 (4th ed. 1971) as follows:

> 1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2. A failure on his part to conform to the standard required . . .
>
> 3. A reasonable (sic) close causal connection between the conduct and the resulting injury . . .
>
> 4. Actual loss or damage resulting to the interests of another . . .

### Duty

Our Supreme Court has defined negligence as the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them. The breach of duty may be by negligent act or a negligent failure to act. *Dunning v. Warehouse Co.*, 272 N.C. 723, 158 S.E. 2d 893 (1968). The plaintiffs' complaint alleges that the defendant Younger Brothers Lounge furnished beer to Donny Ray Fletcher while he was in an intoxicated condition, in violation of G.S. 18A-34. Plaintiffs do not contend that this statute creates a new civil cause of action. Rather, plaintiffs contend that this statute sets a minimum standard of care for purposes of the common law cause of action based upon ordinary negligence. That is, plaintiff is contending that an unexcused violation of this statute is negligence *per se* under the rule of such cases as *Gore v. Ball, Inc.*, 279 N.C. 192, 182 S.E. 2d 389 (1971) and *Bell v. Page*, 271 N.C. 396, 156 S.E. 2d 711 (1967).

In *Lutz Industries v. Dixie Home Stores*, 242 N.C. 332, 341, 88 S.E. 2d 333, 339 (1955) our Supreme Court recognized that a standard of conduct may be determined by reference to a statute that imposes upon a person a specific duty for the protection of others, so that a violation of such statute is negligence *per se.* The Restatement (Second) of Torts, § 285 provides:

> How Standard of Conduct is Determined.
>
> The standard of conduct of a reasonable man may be

(a) established by a legislative enactment or administrative regulation which so provides, or

(b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

(c) established by judicial decision, or

(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision.

We also quote Comment c to this section:

Standard adopted from legislation.

Even where a legislative enactment contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence. The same is true of municipal ordinances and administrative regulations. See § 286 and Comments.

Section 286 provides:

When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted.

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

G.S. 18A-34(a)(2) provides that it shall be unlawful for a licensee or permittee to knowingly sell at retail malt beverages to an intoxicated person. The persuasive trend of modern tort law in this

area of statutory regulation is well illustrated in *Marusa v. District of Columbia, supra.*

In *Marusa* the court held that regulations controlling the sale of alcoholic beverages in the District were enacted to enhance the public safety. The statute in *Marusa* made it a criminal offense for a licensed vendor to serve alcoholic beverages to a person who is intoxicated or who appears intoxicated. 25 D.C. Code § 121, 132.

The court held that violation of the statute was evidence of negligence sufficient to state claim against a tavern owner arising from a patron's drunken shooting of a third party. The court set out the criteria for determining whether violation of a criminal statute can create civil liability as follows:

> Generally, the law or regulation should be one designed to promote safety; the plaintiff must be a "member of the class to be protected" by the statute; and the defendant must be a person upon whom the statute imposes specific duties.

Marusa's case meets these criteria.

> It seems obvious that regulations governing the sale of liquor are intended to enhance public safety; such statutes serve "the well-being of the community" by guarding against "the dangers attending the indiscriminate sale of intoxicating liquors." It is also obvious that the statute imposes duties upon tavern owners such as DeMiers. In light of the purpose of the statute, we think those duties are owed to the community at large — not only to patrons of the tavern-owners' taverns, but also to third parties, such as Marusa, who might come into contact with inebriated persons.

484 F. 2d at 834. The rationale behind such statutory standards of conduct was eloquently stated by the court in *Jardine v. Upper Darby Lounge, supra* at 631-32, 198 A. 2d at 553.

> Since an intoxicated person is and can be an instrument of danger to others, especially if he is operating a motor vehicle, the Legislature of Pennsylvania declared by the Act of 1951, as already stated, that it shall be unlawful for any person to sell liquor to one already intoxicated. *The first prime requisite to de-intoxicate one who has, because of alcohol,*

*lost control over his reflexes, judgment and sense of respon-*
*sibility to others, is to stop pouring alcohol into him.* This is
a duty which everyone owes to society and to law entirely
apart from any statute. The person who would put into the
hands of an obviously demented individual a firearm with
which he shot an innocent third person would be amenable in
damages to that third person for unlawful negligence. *An in-*
*toxicated person behind the wheel of an automobile can be as*
*dangerous as an insane person with a firearm. He is as much*
*a hazard to the community as a stick of dynamite that must*
*be de-fused in order to be rendered harmless. To serve an in-*
*toxicated person more liquor is to light that fuse.* (Emphasis
added.)

[1] Although G.S. 18A-34 has never previously been so con-
strued, its general purposes would appear to be (1) the protection
of the customer from the adverse consequences of intoxication
and (2) the protection of the community at large from the possible
injurious consequences of contact with an intoxicated person. Ac-
cordingly, we adopt the requirements of G.S. 18A-34 as the min-
imum standard of conduct for defendant-licensees, and hold that a
violation of this statute can give rise to an action for negligence
against the licensee by a member of the public who has been in-
jured by the intoxicated customer. This approach is consistent
with the interpretation given such statutes by the authorities
previously discussed, those cited at note 6, *supra,*[8] and with the
rationale followed by our Supreme Court when an ordinance im-
poses a public duty. "The violation of a municipal ordinance im-
posing a public duty and designed for the protection of life and
limb is negligence *per se." Bell v. Page, supra* at 399, 156 S.E. 2d
at 715. The complaint in this case alleges that plaintiffs are
members of the general public, in particular, the motoring public,
and that their personal injuries and death have resulted from an
automobile collision caused by an intoxicated patron of
defendant's tavern who operated his motor vehicle in a negligent
manner. Further, that defendant Younger Brothers Lounge is a
permittee whose sales are regulated by the alcohol control laws.
Thus, the elements of a legal duty owed the plaintiffs under the

8. *See e.g. Elder v. Fisher, supra; Adamian v. Three Sons, Inc., supra;* and
*Berkeley v. Park, supra.*

circumstances surrounding them are stated. *Dunning v. Warehouse Co., supra.* In view of our determination that the Legislature has, by enacting G.S. 18A-34, imposed a specific duty and defined a minimum standard of care sufficient to decide the issues presented by this appeal, we do not reach plaintiff's arguments based on general tort principles of duty and reasonable care under the circumstances. We next examine what conduct on the part of a licensee violates the statute so as to constitute negligence *per se.*

### *Violation or Breach of Duty*

[2] In order for a licensee to violate G.S. 18A-34, there must be a sale to an intoxicated person, whom the licensee knew to be in an intoxicated condition. Most courts imposing civil liability on the basis of a violation of alcohol control statutes have required that before a violation of such statutes can be found, notice or knowledge on the part of the defendant tavern owner that the patron was intoxicated at the time he or she was served alcohol must be shown, regardless of whether that element is contained in the applicable statute. *See e.g. Ono v. Applegate, supra,* 612 P. 2d at 539. In *Kyle v. State,* 366 P. 2d 961 (Okl. Cr. 1961), the court held that conviction under a statute prohibiting the knowing sale of alcohol to an intoxicated person is sufficiently justified by proof that ample circumstances existed to indicate that the defendant knew or should have known that the customer was drunk. The court reasoned as follows:

> In the liquor business, it is the intent of the law that a high degree of responsibility be placed upon the dealer to take care that he does not sell to a drunk man. The rule in such cases is stated in 30 Am. Jur. 672, § 237, wherein it is said, concerning statutes as herein set forth: "These [statutes] usually place a duty upon the seller, before he serves a prospective purchaser, to use his powers of observation to see that which can easily be seen and hear that which can easily be heard, under the existing conditions and circumstances, although he is not required to subject his customers to tests which would disclose symptoms not readily apparent to one having normal powers of observation."

366 P. 2d at 965. The court noted that the use of intoxicating liquor by the average person in quantities sufficient to cause intox-

ication causes many commonly known outward manifestations, and if such observable outward manifestations of intoxication exist, and the seller fails to observe or ignore them and serves the customer, he has broken the law. *Id.* In other words, a sale of alcohol to a visibly or obviously intoxicated customer would constitute a violation of such a statute. *Jardine v. Upper Darby Lounge, Inc., supra,* involved a claim of negligence based on the violation of a statute prohibiting the sale of alcohol to a "visibly intoxicated" person. The court held the examining doctor's evidence describing the condition of the motorist shortly after the accident to be relevant, competent and revelatory on the issue of whether the motorist was visibly intoxicated before he obtained his last beer at the defendant's tavern. 413 Pa. at 629-30, 198 A. 2d at 552. The outward manifestations of intoxication described by the doctor consisted of bloodshot eyes, thick speech, emotional disturbance, unsteady gait, poor coordination and a strong smell of alcohol from the motorist. In addition, the testimony of a police officer arriving at the scene that the motorist was "visibly drunk" and "just drunk," as well as the testimony of other tavern patrons was held relevant and admissible on the issue.

We are cognizant of the fact that what is later to be identified as "obvious intoxication" may often only be recognizable with absolute certainty after the fact.[9] However, the visible indicia of intoxication such as those listed in *Jardine* are sufficiently well-known and plain to put the reasonably prudent tavern owner on notice of the patron's condition. We conclude that for purposes of imposing civil liability, before a violation of G.S. 18A-34 may be found, the plaintiff must allege and prove (1) that the patron was intoxicated and (2) that the licensee or permittee knew or should have known that the patron was in an intoxicated condition at the time he or she was served. We are of the opinion that the forego-

---

9. The court in *Cooper v. National Railroad Passenger Corp.,* 45 Cal. App. 3d 389, 394 n. 1, 119 Cal. Rptr. 541, 544 (1975), stated the problem inherent in visual diagnosis of intoxication as follows: "What is patent when the drinker falls off his bar stool may have been only latent sixty seconds earlier . . . Visual diagnosis of intoxication has not greatly improved upon Peacock's rough and ready classification of 1829:

> 'Not drunk is he who from the floor
> Can rise alone and still drink more;
> But drunk is he, who prostrate lies,
> Without the power to drink or rise.' "

ing standard will not result in the imposition of an undue burden, for the tavern owner may readily protect himself by the exercise of reasonable care under the circumstances. As the court observed in *Alegria v. Payonk, supra* at note 5, it is of "pivotal significance" that such licensees are in the daily business of selling intoxicating beverages, giving them, as a class, a presumed expertise in such matters commensurate with the duty of care imposed by statute or otherwise.

Plaintiffs' complaint alleges a sale to Donny Ray Fletcher while he was intoxicated, under circumstances indicating that defendants knew or should have known that he was in an intoxicated condition. These allegations state a claim for negligence *per se* sufficient to withstand defendants' motion to dismiss. We next examine the proximate cause element of a common law dram shop action.

### Proximate Cause

"It is well settled law in this jurisdiction, that when a statute imposes upon a person a specific duty for the protection of others, that a violation of such statute is negligence *per se.* Of course, to make out a case of actionable negligence the additional essential element of proximate cause is required." *Lutz Industries, Inc. v. Dixie Home Stores, supra,* at 341, 88 S.E. 2d at 339. In *Bell v. Page, supra,* the court stated the rule as

The violation of a municipal ordinance imposing a public duty and designed for the protection of life and limb is negligence *per se.* However, to impose liability therefor it must be established that such violation proximately caused the alleged injury. The general definition of proximate cause, including the element of foreseeability, is applicable in determining whether the violation of such ordinance constitutes actionable negligence . . .

. . . "What is the proximate or a proximate cause of an injury is ordinarily a question for a jury. It is to be determined as a fact from the attendant circumstances. Conflicting inferences of causation arising from the evidence carry the case to the jury." (Citations omitted.)

271 N.C. at 399-400, 156 S.E. 2d at 715. In *Sutton v. Duke, supra* at 107, 176 S.E. 2d at 168-69, the court defined proximate cause.

In this jurisdiction, to warrant a finding that negligence, not amounting to a wilful or wanton wrong, was a proximate cause of an injury, it must appear that the tort-feasor should have reasonably foreseen that injurious consequences were likely to follow from his negligent conduct. (Citations omitted.) It is not necessary that a defendant anticipate the particular consequences which ultimately result from his negligence. It is required only "that a person of ordinary prudence could have reasonably foreseen that such a result, *or some similar injurious result,* was probable under the facts as they existed. (Emphasis in original.)

[3] As we stated in Part II of this opinion, we are persuaded by the reasoning in such cases as *Waynick v. Chicago's Last Department Store, supra, Rappaport v. Nichols, supra,* and *Veseley v. Sager, supra,* that a tavern's sale of alcohol to an intoxicated customer may be found to be a substantial factor in the chain of events culminating in injuries to third persons as a result of the customer's operation of an automobile while intoxicated.

During oral argument defendants raised a legitimate concern that under the theory of actionable negligence proposed, the allegedly negligent act occurs at a time when the customer is *already in an intoxicated condition.* The concern would appear to be directed at the question of whether the illegal sale of one or two further drinks could have sufficiently contributed to the subsequent injury to make the defendant tavern owners liable. The issue would appear to be one of concurrent causes and, as a general rule, a defendant would not be relieved of liability unless he could show that such other causes of intoxication would have produced the injury independently of his negligence.[10] The issue seems likely to arise in a situation where the customer visits several bars or taverns and is served numerous drinks while intoxicated. When a plaintiff has proved that the particular tavern served a customer while that person was visibly intoxicated, in violation of the statute, and that the injury resulted from intoxication, then a permissible inference may be drawn that the illegal serving was a substantial cause of the injury. This would not foreclose a defendant from proving the plaintiff was so intox-

10. *See generally,* 9 Strong, N.C. Index 3d, Negligence, §§ 8, 10, p. 363, 366-67 (1977) and cases cited therein.

icated when the illegal sale was made that the accident would have occurred despite that illegal sale. *See Majors v. Brodhead Hotel,* 416 Pa. 265, 272-73, 205 A. 2d 873, 878 (1965). We cannot say as a matter of law that the injurious consequences of drunken driving could not be found to be the natural and ordinary consequences of the chain of events set in motion by the illegal and negligent sale of alcohol to an already visibly intoxicated person. It must be remembered that,

> [t]here may be more than one proximate cause of an injury. It is not required that the defendants' negligence be the sole proximate cause of injury, or the last act of negligence . . . In order to hold the defendant liable, it is sufficient if his negligence is one of the proximate causes. (Citations omitted.)

*Hester v. Miller,* 41 N.C. App. 509, 512-513, 255 S.E. 2d 318, 320, *disc. rev. denied,* 298 N.C. 296, 259 S.E. 2d 913 (1979). In an age of almost universal use of the automobile, the sale of alcoholic beverages to an already intoxicated tavern patron is not so remote in the causal chain of consumption, resulting intoxication, and injury-producing conduct so as to insulate the tavern owner, as a matter of law, from liability for the injuries so produced. However, the question does arise whether the consumption of alcohol and subsequent acts of the intoxicated consumer are intervening causes sufficient to release the tavern from liability for injuries to the third party.

It is well settled that the negligence of one tortfeasor cannot be insulated by the negligence of another so long as the negligence of the first plays a "substantial and proximate part in the injury . . . [T]he test by which the negligent conduct of one is to be insulated as, a matter of law by the independent negligent act of another, is the reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Watters v. Parrish, supra,* at 796-97, 115 S.E. 2d at 7-8. In *Sutton v. Duke, supra,* 277 N.C. at 108, 176 S.E. 2d at 169, the court quoted the following passage from W. Prosser, Law of Torts, § 50, p. 288 (3d Ed. 1964).

> "Proximate cause" cannot be reduced to absolute rules. No better statement ever has been made concerning the problem than that of Street: "It is always to be determined on the

facts of each case upon mixed considerations of logic, common sense justice, policy and precedent . . ."

Mindful of the need to determine some boundary at which to cut off liability for the infinite consequences which may flow from the negligent act of a defendant, the court concluded that "the concept of the foreseeable risk, especially in cases involving an intervening cause, seems to offer the most elastic and practical solution." *Id.*

We find the principles of proximate and intervening cause developed by our Supreme Court to be substantially identical to those followed by the authorities cited and discussed in Part II, *supra.* On the question of the foreseeability of the consequences of serving an intoxicated customer, these courts, citing reports of the National Safety Council, modern conditions, the problem of the drinking driver, and the almost universal use of automobiles, have concluded that the injurious consequences of furnishing an intoxicated person who drives an automobile more alcohol may be easily foreseeable to the reasonable tavern owner. *See e.g. Berkeley v. Park, supra; Deeds v. United States, supra.*[11] By enacting alcoholic beverage control laws, and expressly prohibiting the sale of alcoholic beverages to an already intoxicated person, the Legislature sought to impose a duty upon licensed liquor vendors for the protection of the general public. We reject the defendants' argument that the effect of this prohibition be nullified by adherence to the theory that the drinking patron alone is responsible for ensuing injuries to innocent third parties, regardless of the fact that he is already intoxicated when repeatedly served more alcohol. If the tavern owner or bartender has actual or constructive knowledge that the intoxicated patron will thereupon drive on the public highways, to exclude injury caused by the patron's drunken driving from the scope of the foreseeable risk created by the negligent sale of alcohol under the theory of proximate cause would be unsound doctrine and a distortion of public policy.

11. *See also Slicer v. Quigley, supra* (dissenting opinion of Bogdanski, J.), 180 Conn. at 264-67, 429 A. 2d at 861-62. (The dissent quotes extensively from the Third Special Report to the United States Congress on Alcohol and Health prepared in June, 1978 by the Secretary of Health, Education, and Welfare, and argues that in today's automobile age, it is unrealistic to conclude that automobile accidents caused by the drinking driver are unforeseeable intervening causes.)

The reasonable foreseeability of injuries caused by the intervening negligent conduct of an intoxicated motorist is recognized in the tort of "negligent entrustment." In this respect the negligent sale of intoxicating liquors is closely analogous to negligent entrustment. Generally stated, one who entrusts a vehicle to another may be held liable for damages resulting from the use of the vehicle under the theory of negligent entrustment where he knew, or should have known in the exercise of ordinary care, that the person to whom the vehicle was entrusted was intoxicated at the time of the entrustment or was likely to become so thereafter because of his habit of drinking. 19 A.L.R. 3d 1175, § 3, p. 1182-83 (1968). The tort has been recognized in North Carolina. *See e.g. McIlroy v. Motor Lines,* 229 N.C. 509, 50 S.E. 2d 530 (1948); *Taylor v. Caudle,* 210 N.C. 60, 185 S.E. 446 (1936). In *Roberts v. Hill,* 240 N.C. 373, 378, 82 S.E. 2d 373, 378 (1954) the Supreme Court observed that the basis for the defendant's liability is not imputed negligence, but the *independent and wrongful breach of duty in entrusting* his automobile to one who he knows or should know is likely to cause injury.

Many courts have recognized the similarity between the two torts.[12] In *Alegria v. Payonk, supra,* the court noted that the tort of "negligent entrustment" is a recognition of the foreseeable risk of injury which exists when two ingredients are combined; the automobile and an incompetent or incapacitated driver. Reasoning that if a party may be liable for providing an intoxicated individual with an automobile, the converse, providing the driver of an automobile with intoxicants, where proven, should also result in liability for consequential injuries. 101 Idaho at 620, 619 P. 2d at 138.

Thus, considerations of logic, common sense, and precedent lead to the conclusion that principles of "proximate cause" not be used to limit the liability of a tavern owner who negligently sells alcohol to an already visibly intoxicated patron. The remaining consideration is that of public policy.

12. *See e.g. Rappaport v. Nichols, supra; Elder v. Fisher; Mitchell v. Ketner, supra,* 54 Tenn. App. 656, 393 S.W. 2d at 759. The court stated it could "see little difference in principle between the act of an owner entrusting an automobile to one known to be an habitual drunkard and the act of a tavern keeper in plying the driver of a car with intoxicants knowing that he is likely to drive upon the public highway where he will become a menace to third persons."

Defendants rely on the Wisconsin decision in *Garcia v. Hargrove*, 46 Wis. 2d 724, 176 N.W. 2d 566 (1970), where the court by a 4-3 decision reaffirmed the common law rule of nonliability on the controlling consideration of public policy. The dissenting opinion of Hallows, C.J., points out that the majority (1) recognizes that the selling of liquor to a drunk is negligence and a substantial factor contributing to the cause of a foreseeable injury to third persons; (2) reiterates the court's past position that it has a duty and the power to change and mold the common law to meet changing needs and is not compelled to defer changes in the common law to the legislature; (3) sidesteps the question of whether the legislature had pre-empted the field; and (4) rests its decision in part upon the traditional ground that creating liability would open the door to a flood of unfounded cases. The sole consideration of public policy of evident concern to the majority was the question of liability for noncommercial supplier of alcoholic beverages. That question is not before us in this case. We find the dissenting opinion in *Garcia* most persuasive on the question of whether public policy concerns dictate liquor vendor liability in view of the shift in modern conditions from "commingling alcohol and horses to commingling alcohol and horsepower." 46 Wis. 2d at 737, 738-39, 176 N.W. 2d at 572, 573.

Of course, drinking is a social problem but the function of law is to help solve social problems. Law is life; it deals with the relationship of human beings and must concern itself with everyday problems whether they are labeled social or legal. It does no good to verbalize about the court's inherent power to update the law and then not act when there is a need crying for satisfaction. In recognizing the selling or giving of liquor to a drunk is negligence because it is reasonably foreseeable that such a person will cause harm to another while intoxicated, the common law justly removes an arbitrary exception to the fault principle of tort liability. This reasonable foreseeability of harm is evidenced by the statistics of auto accidents and carnage on our highways. (Citations to Highway Safety Reports omitted.) Recognizing liability is not singling out a particular type of business upon which to impose liability. On the contrary, the majority opinion in effect immunizes a particular industry from liability for

conduct the court concedes to be negligence and a cause of injury to third persons.

The view expressed by the *Garcia* dissent is entirely consistent with the trend of our courts to "expand liability in an effort to afford decent compensation . . . to those injured by the wrongful conduct of others." *Mims v. Mims*, 305 N.C. 41, 55, 286 S.E. 2d 779, 788-89 (1982). In *Mims* the court pointed out several recent areas of judicial modification in the common law including: recognition of a cause of action for loss of consortium, *Nicholson v. Hospital*, 300 N.C. 295, 266 S.E. 2d 818 (1980); abolition of charitable immunity for public hospitals, *Rabon v. Hospital*, 269 N.C. 1, 152 S.E. 2d 485 (1967); and abolition of sovereign immunity in contract actions against the State of North Carolina, *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976). The *Mims* decision itself recognized the presumption of a gift when property purchased from funds of the wife is placed in the name of the husband. *See also Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E. 2d 36 (1981) upholding a cause of action against a shopping mall when a shopper was robbed and battered in the mall's parking lot on theory of foreseeable risk of danger from intentional or criminal acts of third persons.

We, therefore, hold that the consequences of serving liquor to an intoxicated motorist, in light of the universal use of automobiles and the increasing frequency of accidents involving drunk drivers, are not reasonably unforeseeable events so as to insulate a tavern owner who knew or should have known that his patron intends to drive a motor vehicle from liability as a matter of law. Of course, the act of the patron in consuming the alcohol may certainly be considered a contributing factor, but whether it is such an intervening cause as would break the chain of foreseeable consequences emanating from the tavern owner's negligent serving is a question of fact, to be determined by a jury in the appropriate case. *Bell v. Page, supra.*

The complaint alleges that (1) defendants owned and operated a tavern at the intersection of two main roads near the city limits of Reidsville, North Carolina; (2) the tavern provided a parking lot for its customer's automobiles; (3) after consuming a number of beers there over several hours, Donny Ray Fletcher became intoxicated and, upon leaving the tavern by driving an automobile,

negligently caused a head-on collision with the plaintiffs' automobile some 15 minutes later; (4) at the time of the collision Fletcher had a blood alcohol content of .16% by weight; (5) that defendants knew or should have known that Fletcher habitually became intoxicated and drove automobiles in a negligent manner; and (6) that defendants illegally sold Fletcher beer while he was in such a condition as to be deprived of his willpower and responsibility for his behavior. Thus, the complaint alleges the element of proximate cause by indicating an unbroken sequence of events from the sale of beer to the injury-producing conduct and its consequences, and more than adequately alleges the element of the foreseeability of Fletcher's intervening conduct by the allegation that defendants had knowledge or should have known of Fletcher's drinking and driving habits.[13]

If we assume, as we must, to test the sufficiency of the complaint, that the defendant tavern owners unlawfully and negligently sold malt beverages to Fletcher which resulted in his intoxication, which in turn caused or contributed to his negligent operation of the motor vehicle at the time of the accident, then a jury could reasonably find that the plaintiffs' injuries resulted in the ordinary course of events from the defendants' negligence and that such negligence was, in fact, a substantial factor in bringing them about. We would be unable to say, at this stage, that plaintiffs can prove no facts which would entitle them to recover from defendants for the damages resulting from the automobile collision. *See Sutton v. Duke, supra* at 108, 176 S.E. 2d at 169. Therefore, the complaint does state a claim upon which relief could be granted and the plaintiffs are entitled to be heard on the merits. The order dismissing the complaint is

Reversed.

Judges WELLS and HILL concur.

---

13. The complaint in this case established the element of foreseeability with a great degree of particularity in alleging defendants' knowledge of Fletcher's drinking and driving habits. In view of our discussion of proximate causation, *supra*, the foreseeability of the intervening conduct need not be shown with the degree of particularity as set forth in this case.