WAYNE GRAY EVANS v. WILLIAM R. ROBERSON, JR., SECRETARY OF THE DEPARTMENT OF TRANSPORTATION FOR THE STATE OF NORTH CAROLINA

No. 8323SC936

(Filed 17 July 1984)

**Automobiles § 2.8— license revoked—reinstatement—conviction for altering odometers—reissuance of license not prohibited**

The purpose of G.S. 20-343, which prohibits the alteration of odometers, is to address a form of commercial fraud, while the promotion of highway safety is clearly the purpose of G.S. 20-28.1, which prohibits issuance of a license to a person whose license has been revoked if the person has been convicted during the revocation period of "a violation of any provision of the motor vehicle laws"; therefore, the legislative intent and policy of G.S. 20-28.1 excludes G.S. 20-343 from that class of motor vehicle laws the violation of which justifies the non-issuance of a driver's license.

Judge WHICHARD dissenting.

APPEAL by defendant from *Freeman, Judge.* Judgment entered 26 August 1983 in Superior Court, YADKIN County. Heard in the Court of Appeals 5 June 1984.

In this civil action, plaintiff seeks to have his motor vehicle operator's license (driver's license) restored to him after having had it permanently revoked by defendant.

The essential facts of this case are adequately stated in the trial court's judgment:

1. Plaintiff's North Carolina driver's license was permanently revoked by Defendant effective June 18, 1980 for having been convicted of three (3) or more moving violations while Plaintiff's license was suspended. Defendant's order of revocation was entered pursuant to G.S. 20-28.1.

2. Plaintiff has not been convicted of a moving violation since that date.

3. Plaintiff was convicted on October 14, 1981 in Yadkin County District Court, which conviction has become final, for seven (7) violations of G.S. 20-343 for unlawfully altering the odometers of seven (7) motor vehicles with the intent to change the numbers of miles indicated thereon in Yadkin County District Court Docket Nos. 81 Cr 4027-4033. The seven (7) violations occurred between the dates of March 31, 1981 and May 27, 1981.

. . .

5. On May 4, 1983, Plaintiff made application to Defendant for a probationary license pursuant to G.S. 20-28.1(c). Pursuant to the request Defendant conducted a hearing on Plaintiff's application which hearing was conducted before Hearings Officer Wayne Murdock on July 14, 1983.

6. Defendant denied Plaintiff a probationary driver's license following the above hearing holding as a matter of law that Plaintiff was not eligible for a probationary license under the provisions of G.S. 20-28.1 because Plaintiff's convictions in 1981 of violating G.S. 20-343 for altering the odometers of motor vehicles with the intent to change the number of miles indicated thereon were violations of the motor vehicle laws of North Carolina.

Upon additional inquiry by the court, defendant indicated that plaintiff would have been issued a license but for the convictions of odometer alteration, and the court so found.

Based on these findings, the trial court concluded that plaintiff's convictions were for a form of commercial fraud which, though codified under the motor vehicle laws, bore no relation to highway safety; that the legislative intent of G.S. 20-28.1 is the promotion of highway safety in the operation of motor vehicles;

that plaintiff's convictions under G.S. 20-343 were not for viola-
tions of the motor vehicle laws within the meaning of G.S. 20-
28.1(c); and that defendant was entitled to a probationary license.
Accordingly, the court directed defendant to issue a probationary
license to plaintiff. From this judgment, defendant appealed.

*No appearance or brief for plaintiff appellee.*

*Attorney General Edmisten, by Deputy Attorney General
Millard R. Rich, Jr., for the State.*

EAGLES, Judge.

The sole issue presented by this appeal is whether the
words, "any provision of the motor vehicle laws," as used in the
context of G.S. 20-28.1(c) include G.S. 20-343 within their meaning.
The defendant argues in effect that the legislature intended the
inclusion and that, had it intended otherwise, it would have said
so. We disagree.

G.S. 20-28.1(c) provides in pertinent part as follows:

[A]ny person whose license has been suspended or re-
voked under this section permanently may apply for a license
after three years. Upon the filing of such application, the
Division may, with or without a hearing, issue a new license
upon satisfactory proof that the former licensee has not been
convicted *within the suspension or revocation period of a vio-
lation of any provision of the motor vehicle laws,* alcoholic
beverages laws, or drug laws of North Carolina or any other
state. . . .

G.S. 20-343 provides in pertinent part as follows:

*Unlawful change of mileage.* — It is unlawful for any per-
son or his agent to disconnect, reset, or alter the odometer of
any motor vehicle with the intent to change the number of
miles indicated thereon. . . .

The purpose of G.S. 20-28.1(c) is not to punish affected
drivers, that being the purpose of other provisions of the motor
vehicle laws. *See Ennis v. Garrett,* 279 N.C. 612, 184 S.E. 2d 246
(1971) (statute applies only where license has been revoked).
Rather, the clear purpose of G.S. 20-28.1(c) is to promote safety on

the public highways by preventing the issuance of a driver's license to persons whose conduct, as evidenced by their conviction record, provides grounds for a reasonable belief that, if allowed to drive, they would pose a threat to that safety. A conviction of one of the so-called "moving violations," *see* G.S. 20-16, of this and other states also provides such grounds. Similarly, conviction of a drug or alcohol offense is an indication that the person convicted encourages drug and alcohol abuse and permits the inference that he is more likely to abuse those substances than one who has not been recently convicted of such an offense. Logic and common sense indicate that those who abuse drugs and alcohol are likely to continue their abuse when behind the wheel of a motor vehicle.

As this Court, speaking through Judge Arnold, recently said, "[l]icensed drivers are aware that driving while intoxicated threatens the safety of others." *Huff v. Chrismon*, 68 N.C. App. 525, 315 S.E. 2d 711, *rev. den.* 311 N.C. 756, 321 S.E. 2d 134 (1984). In that case, Judge Arnold also observed,

> There appears to be a growing trend in this State to maximize the punishment and deterrence which impaired drivers are subjected to. This trend is seen in the recent enactment of the "Safe Roads Act" with its stiff penalties for impaired drivers. . . . This State's growing concern and outrage stemming from injuries and deaths caused by impaired drivers is further seen in our court's recognition of a common law dram shop liability.

*Id. See also Hutchens v. Hankins*, 63 N.C. App. 1, 303 S.E. 2d 584, *rev. denied*, 309 N.C. 191, 305 S.E. 2d 734 (1983) (recognizing common law dram shop liability). *See generally*, Comment, *Punitive Damages and the Drunken Driver*, 8 Pepperdine L. Rev. 117 (1980).

We note that where the law directs suspension, revocation, or non-issuance of a driver's license, the grounds are convictions for "moving violations," or other statutory violations relating to highway safety, or situations where an individual's capacity to operate a motor vehicle safely are manifestly questionable. *E.g.*, G.S. 20-9, 20-13, 20-16, 20-16.1, 20-16.4, 20-17, 20-17.1, 20-23.2. We note with interest that G.S. 20-17(3) subjects a person to license revocation if convicted of "[a]ny felony in the commission of which

a motor vehicle is used" and point out that a violation of G.S. 20-343 is a misdemeanor. G.S. 20-350.

In its argument, defendant concedes that the policy behind G.S. 20-28.1(c) is the promotion of highway safety. Defendant contends that G.S. 20-343 is a safety-related statute in that it is designed to protect consumers from a false sense of safety induced by an odometer reading that is less than the actual mileage of the car. This argument is premised on defendant's unsupported assertion that safety-related mechanical failures are more likely to occur in cars with greater mileage. To the limited extent that this may be true, we note that our statutes require periodic safety inspections of all motor vehicles. G.S. 20-183.2 *et seq.* The retail sale of an automobile by a dealer without the dealer first having the required inspection performed has been held to be negligence *per se. Anderson v. Robinson*, 8 N.C. App. 224, 174 S.E. 2d 45 (1970).

Our research discloses that G.S. 20-28.1 was enacted in 1965 as an additional single provision of the Uniform Driver's License Act of 1935 (G.S. 20-5 *et seq.*). N.C. Session Laws 1965, c. 286. The Vehicle Mileage Act, G.S. 20-340 *et seq.*, containing the predecessor to the current G.S. 20-343, was enacted as a separate Article under Chapter 20 in 1973. N.C. Session Laws 1973, c. 676. G.S. 20-343 was amended to its present form in 1979. N.C. Session Laws 1979, c. 696. While nothing may be conclusively inferred from this information, we think that the 1965 Legislature did not anticipate the enactment eight years later of the Vehicle Mileage Act and that the apparent inclusion of G.S. 20-343 within the compass of G.S. 20-28.1 was not intended to have the result urged by appellant.

We agree with the trial court that the purpose of G.S. 20-343 is to address a form of commercial fraud which is only indirectly related to highway safety. The promotion of highway safety is clearly the purpose of G.S. 20-28.1. Based on our reading of relevant statutory and case law, we believe that the legislative intent and policy of 20-28.1 excludes G.S. 20-343 from that class of motor vehicle laws the violation of which justifies the non-issuance of a driver's license. We therefore conclude that a violation of G.S. 20-343 is not "a violation of any provision of the motor vehicle

laws" within the meaning of G.S. 20-28.1. Accordingly, the judgment of the trial court is

Affirmed.

Judge ARNOLD concurs.

Judge WHICHARD dissents.

Judge WHICHARD dissenting.

G.S. 20-28.1(c) provides that a new license to drive may be issued to a person whose driving privilege has been suspended or revoked only "upon satisfactory proof that the former licensee has not been convicted within the suspension or revocation period of a violation of any provision of the motor vehicle laws." That G.S. 20-343 is a provision of the motor vehicle laws is beyond dispute, and that defendant was convicted of seven violations of G.S. 20-343 while his license to drive was permanently revoked is uncontroverted. The express language of G.S. 20-28.1(c) thus precludes issuance to defendant of a new license to drive.

The trial court and the majority here may be correct in their conclusion that it was not the legislative purpose and intent to proscribe issuance of a license to persons convicted of the variety of commercial fraud in question. If such was the purpose and intent, however, the General Assembly could not have said so more clearly.

The judgment below and the majority opinion here effectively repeal G.S. 20-28.1(c) *pro tanto.* Such should be the prerogative of the General Assembly, not the courts. Even in the face of considerable legitimate doubt, I would assume that the legislature meant what it plainly stated, and would leave to that branch of the government the correction of its own error, if such it is. "[I]t is quite wrong to alter the language of a statute for the purpose of getting at its meaning." *Nance v. R.R.,* 149 N.C. 366, 373, 63 S.E. 116, 119 (1908) (quoting Lord Coleridge in *Coe v. Lawrence,* 72 E.C.L. (1 Ellis & B.) 516).

I thus vote to reverse and remand to the Superior Court for issuance of an order directing the Division of Motor Vehicles to

deny petitioner's application for a probationary license pursuant to G.S. 20-28.1(c).